In re William and Carolyn BEHRENS, Debtors/Movants,

v.

WOODHAVEN ASSOCIATION, Respondent.

Bankruptcy No. 83 B 4896.

United States Bankruptcy Court, N.D. Illinois, E.D.

July 26, 1988.

**973**

Gary Shilts, Aurora, Ill., for debtors/movants.

David P. Lloyd, Teller, Levit & Silvertrust, Chicago, Ill., for respondent.

Raymond Costello, Costello & Costello, Carpentersville, Ill., trustee.

## MEMORANDUM & OPINION

ROBERT E. GINSBERG, Bankruptcy Judge.

### JURISDICTION AND PROCEDURE

This matter comes before the Court on the Debtors' motion for this Court to issue a rule to show cause under Bankruptcy Rule 9020 why the Woodhaven Association, ("Woodhaven"), should not be held in contempt for violating the permanent injunc-

tion against attempts to enforce discharged debts. *See* 11 U.S.C. § 524(a). This is a proceeding arising under the Bankruptcy Code. Accordingly, this Court has jurisdiction over this matter under 28 U.S.C. § 1334(b) and the general order of the United States District Court for the Northern District of Illinois of July 10, 1984, referring all bankruptcy cases and proceedings in this district to judges of this Court. *See* 28 U.S.C. § 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) as a matter relating to the dischargeability of debts.

### FACTS

Although the facts do not seem to be in dispute, the parties have not supplied the Court with a stipulation of facts. In addition, the Court's problems in this regard are compounded by the fact that the Court's file for this case is in storage. Nevertheless, to save the parties from having to file another round of briefs, the Court will state the facts as they appear on the docket in this case and as the parties seem to assume in their briefs.

On April 18, 1983 the Debtors filed a petition under Chapter 7 of the Bankruptcy Code. The Debtors were granted a discharge in that case on June 22, 1983. The briefs seem to assume that among the assets scheduled by the Debtors was their ownership of a condominium property, a vacation camping lot. Apparently the liens against the camping lot at least equalled its value as on May 13, 1983, the trustee filed a no-asset report in the case. The Debtors' bankruptcy case was closed on July 19, 1983, without the trustee having taken steps to administer the condominium property. Thus, on that date the property was abandoned to the debtor. 11 U.S.C. § 554(c).[1] Woodhaven knew that

---

**1.** The Court notes that it was the closing of the case, and *not* the filing of the no-asset report which resulted in abandonment of the property. Abandonment requires either a court order after a notice and a hearing, *see* 11 U.S.C. § 554(a), (b); Bankruptcy Rule 6007, or a failure to administer scheduled assets *and* a closing of the case. 11 U.S.C. § 554(c). While the filing of a no-asset report may indicate an intent to abandon, the no-asset report does not close

the case. Only the Court can close the case. 11 U.S.C. § 350(a). Therefore, the no-asset report in and of itself cannot abandon property of the estate. *See* 11 U.S.C. § 554(c); *In re Strelsky*, 46 B.R. 178 (Bankr.E.D.Va.1985). *Cf. In re Dlugopolski*, 67 B.R. 122 (Bankr.D.Kan.1986). If the Debtors' interest in the camping lot was not scheduled, the lot is still property of the estate. 11 U.S.C. § 554(a). If that is the case, Woodhaven apparently would have to look to the estate

the Debtors had filed bankruptcy and received a discharge. Nevertheless Woodhaven instituted an action in Illinois state court against the Debtors seeking to collect postpetition assessment fees. On October 1, 1987 Woodhaven obtained a default judgment against the Debtors in the amount of $1,802.37. The Debtors have asked this Court to void that judgment and to hold Woodhaven in contempt for obtaining the judgment in violation of the discharge injunction.

## DISCUSSION

The Debtors argue that Woodhaven violated the injunction against recovering discharged prepetition debts which arises automatically upon discharge. See 11 U.S.C. § 524(a). The Debtors also claim that their obligation to pay the condominium assessments was an executory contract which was deemed rejected when not assumed within 60 days of the filing of the petition for relief. See 11 U.S.C. § 365(d)(1). The Debtors maintain that they have tried to return the camping lot back to Woodhaven in satisfaction of its lien rights but Woodhaven has been uncooperative and has frustrated the Debtors' efforts in this regard. They argue that Woodhaven is forcing them to remain owners of prepetition property they do not want, and is seeking to impose expenses in connection therewith, and that this interferes with their "fresh start".

Woodhaven responds that the debt was not a discharged prepetition debt or an executory contract because the Debtors' obligation to pay the assessments which were the subject of the state court action did not arise until they were assessed by the condominium Board of Directors, which occurred postpetition.[2] Woodhaven also claims that the Debtors' obligation to pay assessments is a covenant which runs with the land and becomes a lien on the unit

against which the fees are assessed. As Woodhaven sees it, because the title to the property remains in the Debtors' name, notwithstanding abandonment, the fees remain the Debtors' obligation. Finally, Woodhaven argues that this Court does not have jurisdiction to determine the Debtors' liability for postpetition assessments because this Court's jurisdiction does not extend to postpetition debts owed by Chapter 7 debtors. Woodhaven raises this argument because the Debtors suggest in the alternative that their liability should be reduced because they were barred from the property.

■ A fundamental purpose of the Bankruptcy Code is to give honest debtors a fresh financial start. This philosophy is clearly embodied in the Bankruptcy Code's broad definitions of "debt" and "claim". See 11 U.S.C. §§ 101(4), (11). Taken together, these definitions mandate that, absent objection, a debtor be discharged from all prepetition debts, "no matter how remote or contingent". In re Baldwin–United Corp., 48 B.R. 901 (Bankr.S.D.Ohio 1985). The fact that Woodhaven seeks to enforce a liability that was not determined as to amount until a postpetition assessment is made is irrelevant. This is true even if the assessment was based entirely on services rendered by Woodhaven in connection with the camping lot postpetition.

■ Similarly, the fact that the contract, for the sake of discussion, was executory and was not assumed by the trustee during the Chapter 7 case and thus was deemed rejected by virtue of 11 U.S.C. § 365(d)(1) is equally irrelevant. Woodhaven does not seek to enforce this contract against the trustee or the estate. It seeks to enforce the contract against the Debtors personally. The Debtors could not assume or reject that contract under 11 U.S.C. § 365. Only

for the assessments it seeks to recover as an expense of administering this case.

2. Woodhaven apparently has barred the Debtors from access to the camping lot on account of the Debtors' failure to pay the condominium assessments. It is unclear whether the Debtors were barred on account of prepetition or post-

petition unpaid assessments. In any case, the Debtors do not really complain about being barred from the camping lot. They do not want to use it. They want to be rid of it. What they complain about is Woodhaven's attempt to saddle them with the expenses for maintaining and protecting the lot they don't want.

the trustee has standing under 11 U.S.C. § 365 in a Chapter 7 case. 11 U.S.C. § 365(a). *Cf. In re Mead,* 28 B.R. 1000 (E.D.Pa.1983). Therefore, 11 U.S.C. § 365 is entirely irrelevant to the resolution of the dispute between the Debtors and Woodhaven.

The key act here is that Woodhaven is seeking to enforce a personal obligation of the Debtors based on a prepetition contract. The question of what is a "debt" for purposes of the Bankruptcy Code and dischargeability is a question of bankruptcy law not state law. *In re Edge,* 60 B.R. 690 (Bankr.M.D.Tenn.1986). *But see In re M. Frenville Co., Inc.,* 744 F.2d 332 (3d Cir.1984), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985). The fact that the amount of the debt cannot be determined until after the bankruptcy petition is filed in no way precludes it from being included within the Bankruptcy Code definition of "debt" and the Debtors' discharge. *In re A.H. Robins Company, Inc.,* 63 B.R. 986 (Bankr.E.D.Va.1986); *In re Edge, supra.* Thus the Debtors' obligation under the condominium agreement was a prepetition debt regardless of when the amounts were assessed. *In re Rosteck,* 85 B.R. 73 (Bankr.N.D.Ill.1988). The Debtors did not reaffirm that debt in accordance with the requirements of 11 U.S.C. §§ 524(c) & (d). The obligation was not found to be nondischargeable under 11 U.S.C. § 523. The Debtors received a discharge under 11 U.S.C. § 727, and their entire obligation on the contract was included within that discharge.

Any other analysis would effectively gut the careful protections Congress afforded individual debtors against unknowing, inadvertent or involuntary reaffirmations in 11 U.S.C. §§ 524(c) & (d) of the Bankruptcy Code. Woodhaven would like to enforce this contract obligation against the Debtors because, in its view, they failed to wriggle out from under the obligations of the contract after bankruptcy. The problem with this analysis is that it is contrary to the scheme of the Bankruptcy Code. The only method (assuming discharge and dischargeability) by which the Debtors' obligation on the contract could have survived bankruptcy was a reaffirmation. In this 1983 case, that reaffirmation would have had to be signed by the Debtors before discharge and not have been rescinded by them within 30 days after it became effective. 11 U.S.C. § 524(c) (1983). *See In re Gruber,* 22 B.R. 768 (Bankr.N.D.Ohio 1982); *In re Long,* 22 B.R. 152 (Bankr.D.Me.1982). Of course, no such reaffirmation was obtained here.[3]

The scheme set up by 11 U.S.C. §§ 524(c) & (d) is exclusive. The legislative history makes it clear that no other method of reaffirming a dischargeable debt can cause a debtor's obligation on a prepetition contract to be enforceable after the debtor is discharged in a Chapter 7 case. *See* 124 Cong.Rec. H11,096 (Sept. 28, 1978); S17,-413 (Oct. 6, 1978). *See also In re Roth,* 38 B.R. 531 (Bankr.N.D.Ill.), *aff'd,* 43 B.R. 484 (N.D.Ill.1984). This conclusion is in no way inconsistent with the abandonment of the property in question to the Debtors under 11 U.S.C. § 554.

While the Debtors might have possession of, and title to, the property after the bankruptcy, it is also clear that all unavoided liens in the property also survive the Chapter 7 case. *See* 11 U.S.C. § 522(c); *Matter of Tarnow,* 749 F.2d 464, 465 (7th Cir.1984) and cases cited therein. *See also In re Duss* 79 B.R. 821 (Bankr.W.D.Wis.1987). Thus, the Debtors keep possession and retain title only until the lienholder decides to foreclose. If there is no reaffirmation, the Debtors have no defense to that foreclosure because no personal obligation exists between the Debtors and the lienholder. The Debtors' personal obligation was extinguished in the Chapter 7 case by their discharge and no deficiency judgment may be enforced against the Debtors.

---

3. There is no evidence here that the Debtors entered into a new postpetition condominium contract with Woodhaven. Therefore the Court need not determine whether it would have jurisdiction to analyze the validity of such a contract in light of 11 U.S.C. §§ 524(c) & (d). What Woodhaven seeks to enforce is the obligation on the only condominium agreement it has with the Debtors, the prepetition agreement.

This matter is before the Court in a rather strange procedural posture. What pends before the Court is the Debtors' motion for a rule to show cause. Nevertheless, the parties have waived an evidentiary hearing and briefed the matter as if the rule had issued. Therefore, the Court will treat the motion for the rule as a motion for contempt under Bankruptcy Rule 9020. That raises the final question, i.e. whether a remedy exists for a violation of the 11 U.S.C. § 524 discharge injunction, and, if so, what that remedy is.

■ The problem is, of course, that there is no equivalent sanction provision to 11 U.S.C. § 362(h) in 11 U.S.C. § 524(a) when the automatic stay becomes the permanent discharge injunction by operation of law on the grant of discharge. *See* 11 U.S.C. §§ 362(c)(2)(C), 524(a). Nevertheless, 11 U.S.C. § 524(a) is an injunction and it has long been the law in bankruptcy cases that willful violations of injunctions such as the automatic stay will give rise to contempt and sanctions. *See, e.g., Budget Service Co. v. Better Homes of Virginia,* 804 F.2d 289 (4th Cir.1986); *In re Stephen W. Grosse, P.C.,* 84 B.R. 377 (Bankr.E.D.Pa. 1988); *Matter of National Marine Sales & Leasing, Inc.,* 79 B.R. 442 (Bankr.W.D.Mo. 1987); *In re Freels,* 79 B.R. 358 (Bankr.E. D.Tenn.1987); *In re Locasico,* 77 B.R. 932 (Bankr.S.D.Fla.1987); *In re Barbour,* 77 B.R. 530 (Bankr.E.D.N.C.1987); *In re Tweed,* 76 B.R. 636 (Bankr.E.D.Tenn.1987); *In re Linton,* 35 B.R. 695 (Bankr.D.Idaho 1983).

■ The same approach should apply under 11 U.S.C. § 524(a) even in the absence of a specific statutory sanctions provision. *See, e.g., In re Barbour, supra.* Creditors cannot be allowed to interfere with a debtor's fresh start by suing in nonbankruptcy courts on discharged debts in the hopes the debtor will not defend or will not raise the bankruptcy discharge as a defense. *See generally* Countryman, *The New Dischargeability Law,* 45 Am. Bankr.L.J. 1 (1971). In addition, just as acts done in violation of the automatic stay are voidable, *see In re Brooks,* 79 B.R. 479 (BAP 9th Cir.1987); *In re Clark,* 79 B.R. 723 (Bankr.S.D.Ohio 1987), acts done in violation of the discharge injunction are voidable. Accordingly, since Woodhaven with full knowledge of the Debtors' Chapter 7 case and discharge chose to sue them after the discharge on a prepetition contract, Woodhaven is found to have willfully violated the discharge injunction and is in contempt of this Court.

■ The appropriate sanction on the facts and circumstances of this bankruptcy case is actual damages and attorney's fees. The Debtors and their attorney therefore are ordered to file a statement of actual damages and attorneys fee incurred as a result of Woodhaven's violation of the 11 U.S.C. § 524(a) discharge injunction with this Court within fourteen days of the date of this Memorandum and Opinion. Within fourteen days after being served with the statement of charges and fees Woodhaven shall either pay such sums to the Debtors and their attorney or shall file a motion with this Court objecting to the amounts sought and seeking a date of for a hearing on those objections. In addition, the Court finds that the state court default judgment obtained by Woodhaven is void, and therefore Woodhaven shall take the steps necessary in the state court to vacate that judgment and to dismiss the action that led to its entry.

## CONCLUSION

IT IS HEREBY ORDERED that the Debtor's Rule to Show Cause is granted and that Woodhaven is in contempt of this Court.