## In re Richard D. HAWK, Debtor.

### No. 99–60663.

United States Bankruptcy Court,
D. New Jersey.

Aug. 6, 2004.

Robert Manchel, Law Offices of Robert Manchel, Marlton, NJ, for Debtor, Richard D. Hawk.

A. Christopher Florio, Stark & Stark, P.C., Princeton, NJ, for Wyckoff's Mill Condominium Association, Inc.

## MEMORANDUM OPINION

KATHRYN C. FERGUSON,
Bankruptcy Judge.

This matter comes before the Court on motion by Chapter 13 Debtor, Richard D. Hawk ("Debtor"), for sanctions against Creditor, Wyckoff's Mill Condominium Association, Inc. ("Association"), and its law firm, Stark & Stark, P.C. ("Stark") (jointly, "Respondents"). The Debtor asserts that because the Respondents never obtained relief from the automatic stay, their efforts to collect post-petition condominium assessments and fees willfully violated the automatic stay provisions of 11 U.S.C. § 362(a), pursuant to § 362(h). Additionally, the Debtor requests that the Respondents "withdrawal [sic] and/or vacate any and all post-petition non-bankruptcy matters" between the parties. The Respondents oppose the Motion.

After reviewing the parties' written submissions, the Court heard oral argument on May 12, 2004, and reserved decision. For the reasons set forth below, the Court finds that the actions of the Respondents violated the automatic stay. Any liens or money judgments obtained in violation of the stay are determined to be void. The request for sanctions is denied.

## DISCUSSION

*Factual Background*

The Debtor filed a voluntary Chapter 13 petition on September 20, 1999. He listed his residence, real property located at 22 Powell Court, Hightstown, New Jersey, on Schedule A of his petition. The Debtor also listed the Association as a secured creditor.

The Debtor's Chapter 13 Plan provided for payment of the pre-petition Association debt. On December 22, 1999, the Association filed an objection to confirmation, but resolved the objection in a Consent Order entered on March 6, 2000. That Order addressed both pre and postpetition arrears and required the Debtor to pay all Association obligations as they accrued in the ordinary course. It also provided that should the Debtor default for a period of 30 days or more, the Association could obtain stay relief by submitting a certification of default to the court. The Court confirmed the Debtor's Chapter 13 plan on May 5, 2000.

The Debtor failed to maintain his post-petition obligation to pay condominium assessments. Instead of certifying that default to this court as contemplated by the Consent Order, the Respondents filed a complaint in the state court, filed a lien against the Debtor's residence, and obtained a money judgment against the Debtor for the post-petition default.

*Violation of the automatic stay*

The filing of a bankruptcy petition under Chapter 13 of the United States Bankruptcy Code ("Bankruptcy Code") operates as an immediate stay against any of the activities enumerated in § 362(a) and not excepted under § 362(b). 11 U.S.C. § 362(a). The stay remains in effect until the court grants a motion to vacate it, or until the case is closed, dismissed, or the debtor's discharge is granted or denied. 11 U.S.C. § 362(d); 362(c). The issue presented by this motion is whether efforts to collect condominium assessments and fees that arise post-petition, post-confirmation are barred by the automatic stay. The

Respondents argue that there was no stay violation because title to the Debtor's residence had revested in the Debtor upon confirmation of the plan, therefore, was no longer property of the estate. 11 U.S.C. § 1327(b). The Debtor maintains that the obligation to pay post-petition condominium assessments is a pre-petition debt, thus collection efforts violated the stay.

■ The Court finds that the Association's focus on property revesting in the Debtor is misplaced because the scope of the automatic stay is broader than merely protecting property of the estate. For example, § 362(a)(5) prohibits a creditor from engaging in "any act to create, perfect, or enforce against **property of the debtor** any lien to the extent that such lien secures a claim that arose before the commencement of the case...." 11 U.S.C. § 362(a)(5)(emphasis added). Similarly, § 362(a)(6) prohibits "any act to collect, assess, or recover a claim **against the debtor** that arose before the commencement of the case...." 11 U.S.C. § 362(a)(6)(emphasis added) In order to determine if the Respondents violated either of those subsections the court must determine if the post-petition condominium assessments are a claim that arose before the commencement of the case. This appears to be a question of first impression in this district.

■ The Bankruptcy Code defines a "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). The United States Supreme Court has recognized that "Congress intended by this language to adopt the broadest available definition of 'claim.'" *Johnson v. Home State Bank,* 501 U.S. 78, 83, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) (citations omitted)(con-

cluding that a surviving mortgage interest is a "claim" under § 101(5)). While "claim" is defined by the Bankruptcy Code under § 101(5), it does not define when a "right to payment" arises. The Supreme Court, however, has "concluded that 'right to payment' [means] nothing more nor less than an enforceable obligation." *Id.* (citation omitted) (alteration in original). In interpreting § 101(5) of the Bankruptcy Code, the Court of Appeals for the Third Circuit has held that the threshold requirement for determining whether a creditor has a "claim" for bankruptcy purposes is whether the creditor has a cause of action under state law. *Jones v. Chemetron Corp.,* 212 F.3d 199, 206 (3d Cir.2000) (citing *Matter of M. Frenville Co., Inc.,* 744 F.2d 332, 337 (3d Cir.1984)). Accordingly, the Court must look to New Jersey law to determine whether the Debtor's post-petition condominium arrears qualify as a "claim" under the Bankruptcy Code.

■ The New Jersey Condominium Act, N.J.S.A. 46:8B–1 to –38, "gives a condominium association the power and responsibility to make common expense assessments." *Owners of Manor Homes of Whittingham v. Whittingham Homeowners Ass'n, Inc.,* 367 N.J.Super. 314, 320, 842 A.2d 853 (App.Div.2004) (citing N.J.S.A. 46:8B–14(a)). It has been noted that the obligation to pay assessments arises from the mere ownership of a condominium unit. *Glen v. June,* 344 N.J.Super. 371, 376, 782 A.2d 430 (App.Div.2001) The Act provides:

> A unit owner shall, by acceptance of title, be conclusively presumed to have agreed to pay his proportionate share of common expenses while he is the owner of a unit.

N.J.S.A. 46:8B–17. Such language suggests that the obligation to pay assessments arises upon the taking of title; the obligation does not need to await the ac-

tual assessment. The extent of a unit owner's liability for common expenses is determined by the assessments, made in accordance with the master deed and by-laws, but it does not arise as a result of them. To that end, it has been noted by several New Jersey courts that the obligation to pay condominium fees is unconditional. *Glen,* 344 N.J.Super. at 376, 782 A.2d 430; *Holbert v. Great Gorge Village South Condominium Council, Inc.,* 281 N.J.Super. 222, 226, 656 A.2d 1315 (Ch. Div.1994). Given the state of New Jersey condominium law, it is beyond cavil that these assessments are "an enforceable obligation," and as such fall within the Code's definition of a claim. *Johnson,* 501 U.S. at 83, 111 S.Ct. 2150. They are a pre-petition claim because they arose upon the Debtor taking title to the property, which occurred pre-petition. The post-petition assessments that are at issue here are merely the "contingent", "unmatured" portion of that prepetition claim.

The same conclusion has been reached by other courts when considering the analogous issue of whether post-petition condominium fees are dischargeable debts. One of the first New Jersey state courts to consider the issue concluded that "the right to collect future condominium assessments, although not presently assessed, constitutes a claim, within the meaning of § 11 U.S.C.A. § 101(5)(A). . . ." *Tiffany by the Sea Condominium Ass'n, Inc. v. Zengel,* 306 N.J.Super. 249, 256, 703 A.2d 402 (Law Div.1997).

Two New Jersey bankruptcy courts have also analyzed the issue in the context of dischargeability. *In re Mattera,* 203 B.R. 565 (Bankr.D.N.J.1997); *In re Pratola,* 152 B.R. 874 (Bankr.D.N.J.1993) The court in *Mattera* undertook a careful anal-

ysis of the relevant Code sections. Although that case involved Maryland law, since the court's ultimate conclusion was based on the definitions of "claim", "contingent", and "unliquidated", its conclusions are equally applicable here:

> [The Court] conclude[s] from this definitional structure that at the time of the filing of [the] debtor's Chapter 13 petition, the obligation of the debtor . . . for postpetition [condominium] assessments was a contingent, unmatured, unliquidated, unfixed right to payment which constituted a "claim". . . . The claim was contingent upon the retention of ownership by the debtor, and the regular assessment of fees by the association. The claim was not fixed in terms of a certain and definite amount due at the time of the filing of the petition. The debt would mature each month as assessments were made by the association.

*Mattera* at 571 Consequently, the court concluded that "postpetition [condominium] assessments constitute claims within the definition of 11 U.S.C. § 101(5). . . ." *Id.* at 572. A similar conclusion was reached in *Pratola* where the court relied on the legislative history of § 101(4)[1] in finding that "[u]nder such a broad definition [of 'claim'], the debtor clearly had a debt for future condominium expense assessments when she filed her bankruptcy petition." *Id.* at 877.

Further support for the position that future condominium assessments are a "claim" can be found in the Bankruptcy Reform Act of 1994. That Act added § 523(a)(16) as a discharge exception governing post-petition condominium assessments and fees. By defining the parameters of when post-petition fees and assessments can and cannot discharged,

---

1. Prior to the 1994 amendments to the Bankruptcy Code, the definition of "claim" was found in § 101(4).

Congress was implicitly stating that these future assessments are claims. If they were not claims, they would not be subject to discharge.

Consistent with the statutory definitions and case law discussed above, the Court finds that the Debtor's post-petition condominium arrears qualify as a claim under the Bankruptcy Code. As a result, by obtaining a lien against the property, the Association violated § 362(a)(5). By obtaining a money judgment against the Debtor, the Association violated § 362(a)(6).

In support of its position, the Association relies on *In re Henline,* 242 B.R. 459 (Bankr.D.Minn.1999) in which the court found that post-confirmation, the stay does not prevent foreclosure of a lien to collect post-petition condominium assessments. The Court does not find that case persuasive for several reasons. First, the *Henline* court assumed without analysis that the postpetition assessments were a post-petition debt. As a result, the *Henline* court undertook no analysis of whether post-petition condominium assessments constitute a claim under the Bankruptcy Code, and thus did not address the implications of § 362(a)(5) of (a)(6). Second, the Third Circuit has directed the courts in this district to look to state law to determine the nature of claims; Thus, New Jersey decisions finding that unmatured condominium fees are a pre-petition claim hold more weight than a case from another jurisdiction.

*Request to vacate actions taken in violation of stay*

■■■■ The Court now turns to the Debtor's request to void all actions taken in violation of the automatic stay. Generally, any action taken in violation of the automatic stay is void *ab initio. Maritime Elec. Co., Inc. v. United Jersey Bank,* 959 F.2d 1194, 1206 (3d Cir.1991). The Third Circuit has, however, recognized an excep-tion to that rule and has clarified that actions taken in violation of the automatic stay are voidable, rather than void *ab initio,* since they are subject to validation through annulment of the stay pursuant to § 362(d). *In re Siciliano,* 13 F.3d 748, 750–51 (3d Cir.1994). However, a court will generally only grant such relief when the action was taken without knowledge of the bankruptcy filing, and cause to grant relief from the stay would have otherwise existed. *Id.* Here, the Association was aware of the bankruptcy, indeed, built the stay into the Consent Order, yet did not move for relief from the stay. Therefore, the Court will grant the Debtor's request to void all actions taken by the Association in violation of the stay.

*Damages for Violating the Automatic Stay*

■■■■ The Bankruptcy Code provides that a debtor injured by the "willful violation" of the automatic stay "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). Moreover, "[w]here willful violation of the stay is demonstrated, compensatory damages are mandatory." *Matter of Mullarkey,* 81 B.R. 280, 284 (Bankr.D.N.J.1987). The Third Circuit has noted:

> It is a willful violation of the automatic stay when a creditor violates the stay with knowledge that the bankruptcy petition has been filed. Willfulness does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the stay be intentional.

*Krystal Cadillac–Oldsmobile GMC Truck, Inc. v. General Motors Corp.,* 337 F.3d 314, 320 n. 8 (3d Cir.2003)(quotation omitted). The Respondents' actions satisfy the above definition of willful violation; however, the analysis does not end here. In *University Medical Center,* the Court of

318

Appeals for the Third Circuit recognized a limited exception to § 362(h) where the creditor has persuasive legal authority indicating that his or her actions do not violate the stay and the law on the issue is sufficiently unsettled. *In re University Medical Center,* 973 F.2d 1065, 1088 (3d Cir.1992).[2] Courts interpreting the Third Circuit's exception in *University Medical Center* have been unclear about whether it is a one or two prong analysis requiring both persuasive legal authority and legal uncertainty, or if just one suffices. *See, e.g., In re Montgomery Ward, LLC,* 292 B.R. 49 (Bankr.D.Del.2003)(applying a two pronged analysis) Resolution of that debate is unnecessary in this instance because the Respondents satisfy both prongs. The law on this issue is unsettled and, as previously noted, this is the first New Jersey bankruptcy decision to address post-petition condominium fees in the context of § 362. Additionally, the Respondents were able to cite caselaw from other jurisdictions to support their position. While this court obviously did not find them persuasive, it is enough to find that the *University Medical Center* exception has been satisfied. Accordingly, the Court will deny the Debtor's request for sanctions against the Respondents pursuant to § 362(h).

### *Conclusion*

For the reasons set forth above, the Debtor's motion for sanctions is denied, but the additional request to void all actions taken in violation of the stay is granted. The Debtor's counsel should submit an order in conformance with this opinion.

---

**2.** In his dissent un *University Medical Center,* Judge Becker criticized the creation of such an exception as not comporting with *In re Atlantic Business and Community Corp.,* 901 F.2d 325 (3d Cir.1990), which had rejected any good faith defense to § 362(h).